UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PETER LYOYA as the
Personal Representative for
THE ESTATE OF PATRICK LYOYA
(deceased),

    *Plaintiff*,

v.

CHRISTOPHER SCHURR and
THE CITY OF GRAND RAPIDS,
    *Defendants*.

Case No.:22-

Hon.

## COMPLAINT & JURY DEMAND

NOW COMES Plaintiff, through counsel, JOHNSON LAW, PLC, complaining of Defendants, and respectfully alleges as follows:

### JURISDICTION & VENUE

1. This is a civil rights action in which the Plaintiff seeks relief for the violation of rights secured by 42 U.S.C. § 1983, the Fourth Amendment to the United States Constitution, and Michigan state law.

2. Jurisdiction of this Court is found upon 28 U.S.C. § 1331.

1

3. The events that give rise to this lawsuit took place in Grand Rapids, Michigan, which is in the Western District of the State of Michigan.

4. Venue is appropriate in the Western District of Michigan pursuant to 28 U.S.C. § 1391(b) because the City of Grand Rapids is in the Western District of Michigan, the individual Defendant is an employee of the Grand Rapid Police Department, and the events that give rise to the lawsuit took place in Grand Rapids, Michigan.

**PARTIES**

5. Each of the above paragraphs are incorporated here.

6. Plaintiff Peter Lyoya is the decedent's--Patrick Lyoya ("Patrick")—father and the personal representative of Patrick's estate.

7. Plaintiff proceeds here in accordance with Michigan's Wrongful Death Act. MCL 600.2921, *et seq*.

8. On April 4, 2022, Defendant Christopher Schurr ("Schurr"), was employed by the Defendant, the City of Grand Rapids ("City"), as a law enforcement officer and was acting under color of state law and within the course and scope of his employment with City.

9. City is a political subdivision of the State of Michigan and has a legal duty to enact and enforce policies, procedures, protocols, and customs that conform with the Constitution and laws of the State of Michigan, as well as the United States.

## FACTUAL ALLEGATIONS

10. Each of the above paragraphs are incorporated here.

11. On April 4, 2022, at approximately 8:11 a.m., Patrick (a 26-yr-old Black male) was driving a tan 2003 Nissan Altima, in Grand Rapids, Michigan, through a residential neighborhood, near the area of Nelson Avenue, SE and Griggs Street.

12. Patrick's friend (also, a Black male) was with him, riding in the front passenger seat.

13. Schurr initially spotted Patrick and his friend when he was driving in the opposite direction. Just as their cars passed each other, Schurr instantly turned around to follow behind Patrick's car.

14. Seconds later, without any discernable ground for reasonable suspicion of a motor code violation or criminal activity, Schurr activated his emergency lights to pull Patrick over.

15. Patrick complied and pulled his car over to the side of the road.

16. His friend stayed in the front passenger seat, while Patrick got out and stood next to his car.

17. Before Schurr could get out of his patrol car, he started yelling at Patrick to get back in his car. Then, he walked right up to Patrick where he was standing.

18. Patrick asked Schurr what he did wrong. Notably, Patrick never articulated a verbal threat to Schurr or anyone else.

19. Though he did not and could not have seen the back of Patrick's car before he whipped his patrol car around, Schurr told Patrick that the license plate on his Nissan did not match the vehicle.

20. Patrick continued to stand next to Schurr, by his driver's door, while also trying to direct his friend to retrieve his license from inside the car.

21. Then, Patrick shut the driver's door and began walking toward the front end of his car.  As soon as Patrick moved, Schurr grabbed Patrick with both hands from behind and told him to put his hands behind his back.

22. Patrick turned and began to run away from Schurr toward an adjacent yard.  Schurr radioed "got one running" and chased after Patrick on foot.

23. Schurr grabbed, kicked, punched, slapped, and kneed Patrick to the ground.

24. Patrick got back on his feet and passively tried to free himself from Schurr.

25. Schurr only grew more combative and physically aggressive toward Patrick.

26. Schurr grabbed Patrick's sweater up with his left hand, while he drew and aimed his Taser at him with his right.

4

27. Contrary to his training, Schurr never gave Patrick a verbal warning before he deployed the Taser.

28. As the first probe deployed, Patrick reflexively extended his left arm to deflect the Taser's barrel away from him, to protect himself.

29. At the same time, the Taser remained firmly within the grip of Schurr's right hand.

30. Again, rather than create space, Schurr stayed within Patrick's reach, re-directed the Taser, and deployed the second, and last remaining, probe. Neither probe made contact with Patrick.

31. Patrick then lost his balance and fell down to the ground with his left arm still extended away from his body in an attempt to aim the Taser's barrel at the ground, and away from him.

32. Schurr knew that after the second deployment his Taser could only be used as a drive-stun. Yet, he pinned Patrick to the ground using his full body weight on Patrick's back.

33. Schurr knew Patrick wasn't armed. But that didn't stop him from holding Patrick down, grabbing his gun, pressing it along the base of his skull, and killing him with one shot to the back of the head.

34. This fatal traffic stop was recorded in part by Schurr's body camera, Patrick's passenger's cell phone, and a Ring™ video camera.

35.   Throughout the encounter, even as he passively resisted being placed under arrest and absorbed Schurr's repeated physical attacks, Patrick never voiced a threat or returned a physical blow, in any form, to Schurr.

### COUNT I:
### 42 U.S.C. § 1983-VIOLATION OF CIVIL RIGHTS
### (Fourth Amendment – Excessive Force)

36.   Each of the above paragraphs are incorporated here.

37.   The Fourth Amendment guarantees citizens to be secure in their persons from unreasonable searches and seizures and the use of excessive force.

38.   At all relevant times, Plaintiff had a clearly established right to liberty, including his right to personal safety and bodily integrity, as well as protection from unreasonable, excessive, and unlawful seizures pursuant to the Fourth Amendment to the United States Constitution.

39.   At all times relevant, as a law enforcement officer acting under color of law, Schurr was required to obey the laws of the United States.

40.   Based on the totality of the circumstances, Defendant Schurr's act of shooting Patrick in the back of the head was objectively unreasonable.

41.   Schurr lacked any lawful basis to shoot and kill Patrick.

42.   Schurr was on top of Patrick and holding Patrick down to the ground at the time Schurr reached for his deadly weapon, placed it to the back of Patrick's head, and pulled the trigger.

43. Patrick was not armed and posed no threat to Schurr or any other person's safety.

44. When he shot Patrick in the back of the head, Schurr had no information to support a reasonable suspicion that Patrick was dangerous.

45. No reasonable officer would have responded to Patrick's get away from a traffic stop as a reasonable basis to use deadly force.

46. Schurr's actions constituted excessive force in violation of the Fourth Amendment.

47. As a proximate result of Schurr's illegal and unconstitutional conduct, Patrick Lyoya died and suffered damages as a result.

## COUNT II:
## 42 U.S.C. § 1983--VIOLATION OF CIVIL RIGHTS
### (Municipal Liability)

48. Each of the above paragraphs are incorporated here.

49. City has a policy, practice, procedure, protocol, and/or custom that demonstrates deliberate indifference to the rights of the Plaintiff and was the cause and moving force behind the violations and harm suffered.

50. City has a history of whitewashing excessive force cases and citizen complaints, and routinely fails to adequately discipline their offending officers, even when City has concluded that the officer violated its policies or procedures.

51. From June 1, 2015 until May 21, 2020, City received 79 citizen complaints for excessive use of force by their police officers yet exonerated or cleared every single officer of any wrongdoing in each complaint made, except in 2.5% of cases.

52. The rare times City finds an officer to have used excessive force, officers are not sufficiently retrained or disciplined in a manner that would discourage future violations of department policies and constitutional rights. Instead, City gives a "slap on the wrist" punishment to officers which only diminishes the importance of their duty to protect the community and encourages the use of excessive force.

53. Even with the same access as the prosecutor's office to the evidence here, City still didn't terminate Schurr from the police department until after he was charged with murder.

54. At Schurr's preliminary examination, City's supervising officer testified that Schurr was justified in his use of deadly force against Patrick. Therefore, City ratified the constitutional violations committed when Schurr killed Patrick.

55. In addition to failing to train, supervise, and discipline officers on the use of excessive force, City has an ongoing practice or custom of racial discrimination.

56. Furthermore, a study was released in April of 2017 that showed that Black drivers were more than twice as likely than white drivers to be stopped by the City's Police Department. Black people only make up 14% of the City's population.

57. Recently, the Michigan Department of Civil Rights has announced that they are investigating complaints of racial discrimination against City's Police Department. The agency has received over 60 complaints related to racial profiling and disparate treatment from Grand Rapids police officers.

58. Tragically and predictably, City's unconstitutional policies, procedures, protocols, and customs, are the moving force behind the constitutional violations complained of here and Patrick's death.

## COUNT III:
## STATE LAW CLAIMS-GROSS NEGLIGENCE & WILLFUL AND WANTON MISCONDUCT—SCHURR

59. Each of the above paragraphs are incorporated here.

60. Schurr owed Patrick a duty to act legally and reasonably and to avoid the use of unnecessary and/or excessive force.

61. Schurr was grossly negligent and breached these duties to Patrick.

62. Schurr breached his duties to Patrick in a number of ways including but not limited to the following:

    a. Failure to make a proper and lawful traffic stop;
    b. Failure to deescalate;

  c. Failure to wait for back up;

  d. Failure to create sufficient space before deploying each Taser probe;

  e. Failure to warn Patrick of his intent to use force before he deployed his taser and/or before he fired his gun;

  f. Failure to use other methods of detainment, arrest, and/or apprehension, short of force including, but not limited to allowing Patrick to flee from an alleged violation of a traffic offense;

  g. An inappropriate, excessive, and inexcusable use of force with a Taser;

  h. An inappropriate, excessive, and inexcusable use of deadly force with a gun; and

  i. Any additional acts and/or failures determined through discovery.

63. Schurr's actions demonstrated a reckless disregard of his legal duties as well as a substantial lack of concern for whether death or injury would result from his actions.

64. Likewise, Schurr's actions were willful and wanton as they demonstrated a malicious risk of harm and an indifference to the consequences of his actions.

65. As the direct and proximate result of Schurr's gross negligence and/or willful and wanton misconduct, Patrick was unlawfully and unnecessarily killed.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Honorable Court grant:

a. Full and fair compensatory damages in an amount to be determined by a jury;

b. Punitive damages in an amount to be determined by a jury;

c. Reasonable attorney's fees and costs of this action;

d. Pursuant to MCL 600.2922, award Patrick Lyoya's estate fair and equitable damages, including, but not limited to, reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for Patrick's pain and suffering, while conscious, during the intervening period between the time of his injuries and his death; loss of Patrick's financial support; loss of services; loss of gifts or other valuable gratuities society; and companionship; loss of parental training and guidance; as well as any other damages cognizable under law; and

e. Any other relief that is fair and just.

Respectfully submitted,

**JOHNSON LAW, PLC.**

Dated:  December 7, 2022  by: */s/ Ayanna D. Hatchett*
Ayanna D. Hatchett (P70055)
Ven R. Johnson (P39219)
Attorneys for Plaintiff
The Buhl Building
535 Griswold, Suite 2600
Detroit, MI 48226
(313) 324.8300
ahatchett@venjohnsonlaw.com
vjohnson@venjohnsonlaw.com

## JURY DEMAND

Respectfully, Plaintiff demands a trial by jury. Fed. R. Civ. P. 38(b),

                              Respectfully submitted,

                              **JOHNSON LAW, PLC.**

Dated: December 7, 2022        by: */s/ Ayanna D. Hatchett*
                              Ayanna D. Hatchett (P70055)
                              Ven R. Johnson (P39219)
                              Attorneys for Plaintiff
                              The Buhl Building
                              535 Griswold, Suite 2600
                              Detroit, MI 48226
                              (313) 324.8300
                              vjohnson@venjohnsonlaw.com
                              ahatchett@venjohnsonlaw.com